KAUFFMAN & RUNGE v. R. A. DEAN.

(February 24, 1880.)

VENUE.— Contract to pay debt in county other than the county in which the promisor resides.

APPEAL from Galveston county. Opinion by WALKER, P. J.

STATEMENT.— This was a suit brought in the district court of Galveston county by the appellants, against the appellee, on an open account for $724.95, the same being, as is admitted in the statement of facts, for advances made and supplies delivered by plaintiffs to the defendant upon a certain letter from defendant to them, written before the advances were made and the supplies furnished, which letter, it is further admitted, was the basis of the business relations between the parties. The defendant is shown by the petition to be a resident citizen of Van Zandt county, in this state; he filed, as answer to the petition, a plea in abatement setting forth the fact of his aforenamed residence in abatement of this suit, and denying, specially, the allegations of the petition, which averred that, by the terms of the contract between them and the defendant, he undertook and promised to pay plaintiffs the debt aforesaid in the city and county of Galveston. The plea in abatement does not state any further or other ground, nor does the record develop any other pleadings in the case. The record seems to be intended to present an agreed statement of the case under article 1516, Paschal's Digest. It is fairly to be inferred that the issue was tried before the judge and without a jury; on the hearing of the evidence judgment was rendered sustaining the plea and dismissing the case.

The appellants assign as error two grounds, as follows: 1. The judgment of the court on the defendant's plea in abatement, alleging residence in Van Zandt county and denying promise to pay in Galveston county, is contrary to law and the evidence, in this, that no express promise or undertaking to pay in Galveston county is necessary, and

the promise of defendant to ship cotton to plaintiffs at Galveston to cover said account for advances and supplies, made to him by them as cotton factors and commission merchants, and for which this suit is brought, such promise being made before said advances and supplies were furnished, is sufficient, and because said defendant's knowledge of the custom and understanding at the time that such accounts are payable in Galveston is sufficient. 2. The judgment of the court is contrary to, and unsupported by, the evidence, in that the promise of defendant to pay in Galveston was fully and sufficiently shown, and there was no evidence to the contrary.

The suit was instituted in Galveston county, evidently under the fourth exception to the general rule that " no person who is an inhabitant of this state shall be sued out of the county where he has his domicile " (Paschal's Digest, article 1423), as follows: " Except in cases where a person has contracted to perform an obligation in any particular county, in which case suit may be instituted in that county or where the defendant has his domicile."

The letter from the defendant to the plaintiffs contained the following proposal, which, as is admitted, was acted on by the plaintiffs in furnishing the supplies and making the advances, the value of which is sued for in this action, and was the basis of the business relations between the parties, viz.: " I make the following statement of my commercial standing with a view of obtaining $2,000 as advance from you, for which I promise to make you liberal shipments of cotton this coming season, and to reduce and settle off my account at your office in Galveston, Texas, as follows: To reduce to $1,500 by 1st of December, and to reduce to $1,000 by 1st of January, 1879, and to reduce to $500 by 1st of February, 1879, and to settle in full by 15th of March, 1879, and to have an interest account at ten per cent. per annum."

This letter was introduced in evidence by the plaintiffs; the defendant testified that he never undertook to pay the

account in any particular place, the agreement with appellants as to the payment of the money being that it was to be covered by shipments of cotton to be made by him to appellants.

OPINION.— The determination of this question of venue depends upon what construction shall be placed upon the terms of the contract contained in the letter. The appellant contends that its effect is to oblige the defendant to pay the account that shall be contracted under his proposition to obtain advances and supplies at Galveston. If that construction be the true one it follows that the suit was properly brought in the district court of Galveston county. It is insisted upon by the counsel for the appellee that by the defendant's proposal, contained in the letter, his agreement was to ship cotton to cover his account and to reduce and settle off his account at Galveston according to the specific terms designated in the letter; and that there could only become an obligation to pay the account through the occurrence of defendant's failure to ship cotton to reduce his account in the manner indicated in the letter, and that the plaintiffs not relying, by their pleadings, on such cause of action based on that state of case, that their action did not lie elsewhere than in the county of the defendant's domicile.

The sentence of the defendant's letter requiring interpretation contains, first, the premises on which is based the promise; which consist, first, in his expressed wish to obtain from the plaintiffs $2,000 as advances; and secondly, to make an exhibit of his affairs as a basis for credit and confidence, viz.: "I make the following statements of my commercial standing with a view of obtaining $2,000 as advance from you." The promise itself, in case the exhibit shall prove satisfactory in effecting his purpose, contains an inducement and a valuable consideration offered, as follows: "for which I promise to make you liberal shipments of cotton this coming season." He also promises to pay for the ad-

vances made, not under the vague indeterminate promise to make liberal shipments of cotton to satisfy the antici- pated indebtedness, but, on the contrary, specially restricts his liability as to amounts and period of maturity of in- debtedness by the designated limitations whereby he obli- gates himself to reduce the same to certain amounts from time to time, until full payment shall be made, on the 15th day of March, 1879, which is eight months after the date of the letter, and is subsequent to the "season" of the year during which the shipments of cotton were to have been made. The further promise contained in the same sentence, and connected with that part of it which has been just quoted by the word "and," is as follows: "and to reduce and settle off my account at your office in Galveston, Texas, as follows," proceeding, as heretofore has been quoted, to state the limitations of his obligation to pay, both as to amounts and time.

Under this interpretation of the contract, whenever there should accrue a right to sue for the price or value of the advances, it is manifest that the plaintiffs would be entitled to elect to sue at "Galveston, Texas." The reasonable construction of the letter, consistently with that urged by counsel for the appellee, can scarcely otherwise be given, unless by discarding the copulative conjunction "and," which connects the sentences, but which at the same time di- vides and distinguishes the proposition made in the sentence. By making such a change the meaning and sense of the sentence will be substantially and materially varied; unless however, such change shall be made, no other than a forced construction can give the sentence a different meaning than that which we place upon it; especially when the entire letter is read in all its parts, and keeping in view the rela- tive situations and occupations of the contracting parties and the prominent and paramount object intended to be accomplished in making the proposal.

Among the most useful, practical and elementary rules for the construction of contracts is this, stated by Judge

Parsons in his treatise on contracts: "So, too, the situation of the parties at the time, and of the property which is the subject-matter of the contract, and the intention and purpose of the parties in making the contract, will often be of great service in guiding the construction, because, as has been said, this intention will be carried into effect so far as the rules of language and the rules of law will permit." 2 Parsons, Con., 499.

When the writer of the letter employed the terms and expressions used by him, it must be inferred that he must have contemplated their acceptance by the promisee in the sense and with the meaning which our construction has placed upon them; in such case the ethical and the legal rule coincide and are to the effect that a party will be held to that meaning which he knew the other party supposed the words to bear, if this can be done without making a new contract for the parties. Id.

"Where the terms of the promise admit of more senses than one, and are fairly susceptible of the meaning in which the promisor believed they were understood, and in which they were actually understood by the promisee, the promise is to be performed in that sense in which the promisor apprehended at the time the promisee received it." Id., p. 497, note (P).

If the language employed in the letter allows of more senses than one, accordingly as it may be punctuated and emphasized (and in the record, it may be remarked, that the sentence contains no punctuation marks whatever), and under one reading may have the meaning given to it which is claimed by the appellee, to the effect that he promised to make liberal shipments of cotton, and through its proceeds, when sold, he would reduce and settle off his account at their office at Galveston, etc.; and under the other, the obligation to pay is construed to have been made separately from that to make shipments of cotton,— if the words used are, and as we think they are, fairly susceptible of conveying to the minds of the plaintiffs the impression, and the

defendant believed they must have been so understood, that he proposed to make them liberal advances of cotton in their business as cotton factors and commission merchants, and also to pay for said advances at their office at Galveston, and that such interpretation must have been given and understood by the plaintiffs, and the defendant must have believed it would be so understood — a belief superinduced not solely from the apparent and natural meaning to be attached to the words of the sentence itself, but alike from their connection and relation to what preceded them, as also to the subsequent limitations made in his, the defendant's, favor,— then it must be enforced accordingly. By those limitations he impliedly reserved the right to control the proceeds of the shipments of the cotton, at all events, to a qualified extent, by force of the express limitation which he placed upon the time when and the amounts to be paid by him, and the absence of any obligation designating the ratio which the shipments should bear to his expected indebtedness; and besides, his undertaking to pay (i. e., "reduce and settle off") was a general one, as distinguished from a promise to pay in specific articles, or out of the proceeds of a designated fund, as, for instance, shipments of cotton.

To obtain accommodation by advances, to be returned or paid on an extension of time to be given to the promisor, was the manifest purpose of the defendant, and his promise "to reduce and settle off his account" in the mode and manner which was designated was equivalent to negativing an undertaking, in case $2,000 should be advanced to him, to pay more than $1,500 by the 1st of December, and to go on reducing the debt as further stipulated. But we are not called upon to construe nor do we mean to be understood as authoritatively construing the contract for any other purposes of the litigation than as appears necessary to determine the question of venue. It is therefore sufficient to say on this head that according to the rules of interpretation which we applied to this letter, and upon the

concession by the parties in the statement of the case that its terms formed the basis of the transaction between the parties, the plaintiffs rightly brought the suit in Galveston county.

The contract contained in the letter, under the construction we have placed upon it, is at variance with the defendant's testimony, who testified that he never undertook to pay the account in any particular place; that the agreement with the appellants as to the payment of the money was that it was to be covered by shipments of cotton to be made by him to the appellants. This evidence contradicts the written instrument which it is admitted was the basis of the transaction between the parties, which must prevail over his oral statements construing it. It is not intimated by the witness that any other or different contract was entered into than that which we have been considering. The construction which the witness may give as to the legal effect of the writing cannot, of course, properly be confounded with facts in the case.

We conclude, therefore, that the judgment below shall be reversed.